David Lieber, a federal tax lawyer from El Paso, Texas I represent the appellants in this case, the Haynes family. Over the last 40 years, I've had several cases appear before this court, and I've been here a few times. So I know that you all have read the briefs and are familiar with the issues. So I would like to get to the two issues that I think are most important in this case. And the first one is why this case is here. Yesterday, the LexisNexis, through Law 60, identified this as one of the five most important cases in 2019, for the remainder of 2019, the last six months. That's frightening. Sorry? That's frightening. I've had several important cases before this court. In fact, Congress has adopted some statutes on cases that this court has had with me. So why is this case here? I mean, this statute of imposing a penalty for failure to file on time has been around for over 100 years. The abatement provision for reasonable cause has been around for over 100 years. Treasury regulations for decades. I mean, we've had thousands of cases. So what is unique about this, and why is it so important? It's because there's been a sea change in technology. In 1985-1986, the Internet was created, and in 1987, e-filing started on a trial basis. And then subsequently, Congress required the IRS to have 80% of all returns e-filed. And then the IRS promulgated an e-filing handbook and a certification process for e-filers to use in order to be qualified to e-file, and then 1,500 error codes. They were all passed. Counsel, there's some reference in the briefs about certain types of tax returns that must be filed electronically. Was this return of that sort, or was this a more generic either-or? Okay. And also, is there any notice or response generated upon e-filing a return such as the one involved in this case? Is there some type of confirmation e-mail to either the taxpayer or the CPA or whoever is the preparer? Yes, sir. There is a confirmation e-mail to the CPA, only to the CPA. The CPA, in his affidavit, stated that he had filed 900 returns, and he had had one return rejected. And Lesert sent him an e-mail identifying the rejection. And that's important because the taxpayer doesn't have access to that e-mail. But when was that sent? A year and a half later? Was it sent immediately when it was not accepted? It was sent immediately when it was not accepted, yes, ma'am. But that's— But not in this case. In other words, he had— I'm talking about the—I think Judge Engelhardt and I are talking about this case. Was Mr. Dunbar ever notified timely by the IRS that it had not been accepted for filing? No. Okay. That's a problem for the IRS. Have they remedied this flaw in the software? No, ma'am. The CPA still receives—like, he had—did the IRS remedy the problem in the software? If they don't accept a filing and they don't tell the CPA, much less the individual— Yes, I understand. —that it's not accepted, well, then— The remedy is this. Several months later, the automated collection system, when it receives— when it recognizes that a return was not filed, sends a letter to the taxpayer that the return was not received. And then the taxpayer has to go to the CPA and say, re-file that return. And was that done in this case? That was done in this case. I thought it was like a year and a half later. Yes, it was 10—I think it was 10 months later. Yes, so at that point, you're accruing a lot of penalties— That's right. —because the IRS didn't accept the filing or advise the CPA to remedy whatever had been filed. It just seems like the burden ought to be on the IRS. Yes, ma'am. The taxpayer has no access to find out if the return was filed or not. The LICERT e-file email comes to the CPA. Now, he can go on— But it doesn't go to the CPA immediately. That's right. In this case, it didn't go. That's right. Exactly. So the CPA did not get it. Where did it go? It didn't go. We don't know. It just didn't go. So is that a software problem? In other words, you all have talked about, was there something that was generated from the IRS that is just in cyberspace somewhere and didn't reach anybody in this case, such that the software failed? Well, we know that there was a failure, a cyber failure. We know that it was between the Internal Revenue Services computer and the LICERT host. And who owns the LICERT or who pays for the license, I should say, or whatever the terminology is, who's responsible for LICERT? The CPA. The CPA. For LICERT, which is an extraordinarily expensive program. At the time of the e-filing, were your clients provided a written paper copy of the tax return? Yes, ma'am. If so, why didn't they pay the taxes? There's nothing in the record about why they didn't pay the taxes. They have paid the taxes. They paid it, I think, the next year. I put it in my brief, the two payments, and they did pay it the next year. I don't know why they didn't. It's not in the record about why they didn't. That's a separate penalty, a failure to pay penalty. This is a failure to file case. They had the information. They had the physical copy of the return so they knew what was due. Yes, ma'am. Okay. Your Honor, if you remand this case, that is one of the issues that we would have to address on remand. In other words, it's a facts and circumstances test about, was the taxpayer reasonable and when did he stop being reasonable? There's a slew of, you know, the taxpayer hired a CPA. He gave the CPA all the information that he needed to file the return. He met with the CPA on several occasions and answered all the questions. He asked the CPA if he had filed an extension. The CPA said yes, and he did file the extension. The CPA gave him a copy of the tax return, prepared a draft copy, and gave it to the taxpayers to review and gave the letter of designation. You can't e-file unless you delegate the duty to e-file to the IRS. And I take it since we're talking about electronic filing that there's going to be an electronic draft out of the taxpayer's account for any tax liability. Is that correct? For paying the tax liability. For paying the tax liability. Yes. But the taxpayer would know that that draft has not, that withdrawal has not taken place. Yes, he would know that. And, Your Honor, candidly, I mean, as we go through these factors, I think I've listed 17 in my brief that favor, it's a facts and circumstances test, and there's like 17 of them that favor the taxpayer. And this is one that we would have to address if you do remand it. In other words, should the taxpayer have been aware that the government had failed to demand payment? And that would be a factor that we would have to address. I have to be candid about it. Like I say, it's a facts and circumstances test. It's an on-balance test. And this would be the one thing, I think, in this case, that we would have to address in detail. Well, the government doesn't have to demand payment. You prepare your tax return. It shows what taxes do. You know you have to pay it. They don't have to notify you and say pay this. That's right. And he paid not only the taxes in full, but he also paid the failure. Yeah, but he paid like a year and a half later or something. He sure did. Looks like he was lying low to me. Whether he was lying low or not on failure to pay, the issue on this case is the failure to file penalty. Right. And whether he had a reasonable excuse. What is the standard for him to get abatement for a failure to file penalty? He did pay. He paid in full, and he paid the penalty, the failure to pay penalty. What the government is trying to hit him with now is the failure to file penalty, and those are different penalties. They are additional penalties. Okay, so your clients never called Mr. Dunbar after the purported e-filing to say did it get filed? Yes, ma'am, they did. They called him and said did it get e-filed. In fact, the affidavits that the taxpayer submitted show that the CPA timely prepared the return. He uploaded it to the software program. He transmitted it to the host, which transmitted it to the IRS. He called the CPA to confirm that it was timely filed. The CPA represented that it was timely filed, and in this case the IRS introduced five years of transcripts trying to prejudice you about the failure to pay, that he hadn't paid, and he had a history of not timely paying. But those transcripts also show that he has a history of timely filing. But he was never advised by Mr. Dunbar that the filing had not been accepted or whatever the terminology. No, because Mr. Dunbar thought it had been filed. And so he represented to the taxpayer that it was timely filed, and the taxpayer obviously has no remedy. There's no place he can go to confirm that it was timely filed. And he has a CPA who has a history of timely filing, so he relied on that representation. But the CPA also gets a confirmation e-mail. I mean, we've been talking a little bit about a rejection e-mail, a notification that your taxes haven't been filed because of whatever deficiency. Mr. Dunbar or any CPA that routinely files electronically, do they not receive some type of e-mail that says, great, we received your tax filing and, you know, that type of thing? I mean, he's absent that, isn't he? The affidavit of the CPA says that he only receives an e-mail when it's rejected. He does not receive one when it's accepted. And with 900 returns, I mean, that's the default provision for LASERT is to receive the e-mail. What I'm telling you is right from his affidavit. So did you say he's supposed to receive a rejection notice? Only a rejection notice, yes. But he didn't receive one. He did not receive one. In this case. That's right. Because of computer malfunction? Because of computer malfunction, yes, sir. Okay. I'm confusing this case with another. This isn't the case where the spouse had the wrong serial number. Yes. In this case, there's 1,500 error codes. He violated one of them because the CPA put the social security number on the Schedule C instead of the social security number. Right. Or it may have been reversed. And it rejected because of that. That's one of the 1,500 error codes, yes. But what is the explanation for it not notifying him of the rejection, not notifying the CPA or the company that sent the e-mail, the return? Your Honor, I think that's a perfect question. That's why we have a reasonable cause standard, an excuse standard. Each facts and circumstances. In this case, we have a computer glitch somewhere between the IRS computer, the e-filing host software, and the CPA. Somewhere in there, there's an error. You don't know where it is? We don't know. We can't find it. We don't know where it is. It's not in the record. The government thinks it may be one thing. It's speculation. The government admits they're speculating. We're speculating. All we know is for sure that we never got notice of rejection and that we timely e-filed. We know that. And we know that the IRS received the e-file, but they're coming back. We don't know what the mistake was. I'm sorry. I thought that was me. The construction across the street. All right. I'm sorry. Go ahead. No, I'm waiting on you. Oh, okay. I'm going to go on. So we have this sea change of technology. What does the IRS do? They reach back 35 years to this old Supreme Court case, Boyle. Remember paper returns? When we put paper returns in envelopes and mailed them, that was filing. Now we have e-filing, and the IRS is asking you to take that 35-year-old case and deny taxpayers access to reasonable cause relief in e-filing circumstances. And this is in direct violation of – I'm going to read to you a phrase out of the Supreme Court case. Our holding necessarily is limited to that issue rather than the wide range of issues that might arise in future cases, which are purely hypothetical at the moment. The amicus brief in this case was filed by the American College of Tax Counsel. That is the – well, I think the most prestigious – they're run by former American Bar Association leaders in the tax division. I understand they pick two cases a year to file an amicus brief in. And they're asking you also not to – oh, gosh, I'm out of time. We feel like this case falls under the substantive advice exception and the taxpayer is unable to perform without special training and effort exceptions in Boyle because in order to e-file, you have to prepare a tax return. You've seen Donald Trump's tax return is taller than he is – it's higher than he is tall. In order to e-file that return, it has to be prepared. Unlike a paper filing, which is just mailing, on e-filing, a return has to be prepared. And then it's got to be transmitted electronically through all of the hoops that we just described. Can I use up some of my rebuttal time? You can finish your sentence. I'm sorry? Go ahead and finish your sentence. So the government relies on – can I use my rebuttal time? Would that be okay? Yes. Okay. The government relies on two cases. The McMahon case – this is really important. I want to say this correctly. Well, not if you take it now. Oh. You can use it on rebuttal. Okay. But if you need some more time on rebuttal, we'll give it to you. All right. Okay. Thank you, Your Honor. Sorry. Oops.  Ms. Ugolini? Good morning, and may it please the Court. I'm Francesca Ugolini, counsel for the United States. I want to address the issue that I understand is every person's first concern when they read this case, what happened to the notice of rejection of the taxpayer's return. I just want to clarify that the record does not make clear that the fault for this lies with the IRS. This case was decided on summary judgment. The only evidence in the record regarding the rejection notice is the CPA's affidavit saying that he didn't get one. There's no evidence as to whose fault that was. Was it the IRS's computer failure to forward the rejection notice? It could have been Lassert's failure. Lassert may have received the rejection notice and failed to forward it to the CPA. Lassert may have actually sent the rejection notice to the CPA. It may have been rejected by his email server. Wouldn't there be evidence of that? There was no discovery on this issue. The case was decided on cross motions for summary judgment. Actually, the taxpayers had initially filed a motion for judgment on the pleadings, saying that they thought the case was clear, that they had reasonable cause. So there just was no factual development of this issue. So there was no IT search for these kind of transmissions? Correct. That seems sort of pitiful. Well, it's not really pivotal because the – I said pitiful. Oh, pitiful. It may well have been. I mean, you're asking for all this money for late filing, but they don't – you haven't proven that they didn't file if they got the notice. You haven't proven that you sent the notice out, and you're saying nobody even conducted discovery with these intermittent parties. Well, there's actually no dispute that the return was rejected. They have conceded and acknowledged that the return was rejected, and it wasn't rejected because of a computer glitch. It was rejected because of a mistake that the CPA made on the return. Right, but when were they notified of the rejection? That's the whole issue. As you said, where's the notice of rejection? Under the IRS e-filing rules, which their CPA was aware of because he was an experienced e-filer, the rule has always been and still is that the return is not considered filed until the IRS acknowledges acceptance. The handbook also provides that – Is there an affirmative acknowledgment? That's the question I asked. The CPA's affidavit, first of all, does not say – I don't have the CPA – It's from the IRS. Do you all send out acknowledgments? I can't believe that. The IRS practice is to acknowledge every filing with either a confirmation that it's received the filing, and then it sends either an acceptance notice or a rejection notice. What do you do in this case? The record does not – I personally don't know, and the record also does not disclose what happened. You're the lawyer for the IRS, so it's your responsibility to know what your client did or didn't do. I wasn't involved in the proceedings below. I've only handled this case. You're involved now. Ultimately, I recognize that the IRS, the best practice is to send a notice that indicates rejection or acceptance, and this is, according to the IRS's practice, what happens. However, I think as the district court recognized, ultimately it's not dispositive or necessary to the issue of timely filing or of reasonable cause. Did I understand – I want to get back to this transmission of information. Did I understand from your answer, notwithstanding what the CPA says in the affidavit, there is an email or an electronic notification when the CPA files the return and says we received the return, a confirmation that the IRS received the return, and then within however long it takes, there is a notification that either the return is acceptable and complies or an email that says, no, the return's been rejected, which would have been the one that's missing in this case, we think, that it has been rejected. So in other words, a CPA like Mr. Dunbar can expect to receive, every time he handles a return and electronically files or tries to can expect to receive two notifications, the acknowledgment and then either an acceptance or a rejection. Is that correct? That's correct, and the CPA's affidavit in this case, which I believe is at record pages 446 through 448, that affidavit does not say that he does not ordinarily receive acknowledgments or confirmations. It just says that he did not receive a rejection notice in this particular case. Okay, because I understood. I can go back and read it if it's in the record, of course, but I understood counsel to say contrary to that. I don't have the affidavit in front of me, so I can't check right now, but I know that that is where it is in the record. The IRS e-filing handbook also says, and that's at record pages 92 through 93, that the IRS acknowledges via email confirmation every filing, and it explicitly requires e-file providers to follow up to ensure that a return has been accepted. And, in fact, the CPA was able to do that in this case a year later when the taxpayers had received a letter from the IRS saying we never received a return. The CPA was able to go online to the LACERT website. This is at record pages 476 and 569. He was able to log on and see that the last entry regarding the return was just that it was sent to the IRS. It didn't say it was accepted. And if you look at this page 569 in the record, that is contrasted with the way this report shows the follow-up regarding the state return, which says it was accepted. The initial extension request for the federal tax return, that says accepted. But this federal return itself, the last entry was just sent to the IRS. So had the CPA followed up, and actually the amicus in this case, American College of Tax Counsel, on page 27 of their brief, acknowledged that the CPA's duty of care, he should have taken some action to follow up when he didn't receive any notice. Had he followed up, he would have learned that the return was rejected, and there was a 10-day grace period to refile to rectify the rejection code. In this case, neither the taxpayers nor the CPA took any action to follow up, to get back online and confirm. When does the 10-day period start? Assuming I don't get the rejection notice because of whatever software glitch, do I have 10 days from the day that I go as the CPA, I go check on it and say, oh, my goodness, it hasn't been accepted. In fact, there's a problem. Do I get 10 days from that day, or is it 10 days from the date of the notice that I didn't get? The IRS e-filing handbook says that it's 10 days from the rejection notice, and so obviously that assumes that you received it. Right. I think the IRS says their practice in this area is to be flexible with taxpayers. So I think that if a CPA or a taxpayer logged back into TurboTax or gets back online and discovers that the return has been rejected and contacts the IRS to work it out, the IRS ordinarily is very flexible in this area. In fact, just this year, in this filing season, the IRS e-filing system was deluged on the day returns were due, and the IRS, of its own volition, gave taxpayers an extra day to file. They also did this several years ago when the TurboTax system was overwhelmed on tax-filing day. But in this case, neither the Haines's nor Dunbar, the accountant, took any action after just sending the return to follow up with the IRS to ensure that it was accepted, and that was the duty of care under the IRS e-filing handbook. I think this Court's decision in Hofner, which was cited by the district court in its opinion, also shows that taxpayers must take affirmative action to ensure a timely filing. It's not enough to passively wait for the IRS to notify you of a rejection. In that case, the taxpayer was facing a criminal prosecution, and the district judge had ordered him to have no contact with his accountant, who was expected to be a witness in the criminal trial. So the taxpayer didn't file his return because his accountant had all of his tax records, and couldn't contact, was heeding the district court's order, and couldn't contact his CPA. He eventually filed his return late. Actually, after the criminal prosecution ended, the taxpayer went and asked the district court to modify its order so that he could get his tax records back. He filed his return late and faced a late filing penalty. A panel of this Court held that that was not reasonable cause for the late filing because the taxpayer was expected to, even though he was obeying a district court order, the taxpayer was expected to go to the district court and ask for a modification to get his records back from his CPA. This is the thrust of Boyle and this Court's holdings, that it is a non-delicable duty of a taxpayer to ensure a timely filing, and that means get it done however you have to get it done. The only exceptions are when you are truly unable to effect a timely filing. Why did the IRS wait so long to send out the letter to the taxpayers seeking the penalties? Well, the IRS sent the letter, I believe it was in August. It was in August 2012 saying we haven't received your return. A year later, wasn't it? It was about 10 months after their return was due. Why did that take so long? Again, I apologize, Your Honor. I don't know why it took so long. I know the IRS deals with over 100 million tax returns that are filed every year. It tries to follow up as timely as it can. I cannot explain why in some cases it is able to respond in a more timely fashion than others. But again, I think this is an issue that the Supreme Court addressed in Boyle, that we have a tax system that relies on voluntary self-reporting, and because of the volume of tax returns, the IRS simply cannot bear the burden of ensuring a timely filing. But could the IRS, would they have access to the fact that the e-filing was rejected or not accepted, whatever the magic language is? The IRS would have access to that, but the IRS is dealing with over 100 million returns, whereas the taxpayer... So they must have known something. What did they know and when did they know it? I cannot answer that for you, Your Honor. But the taxpayer only has to think about his own return, and the taxpayer and the CPA also have it within their power to take measures to follow up. There is an IRS phone number that you can call. There is an IRS website that can be checked. But you have to know something is wrong first. I just don't buy into that argument. Well, I think the taxpayers here did know something was wrong. When the IRS did not attempt to collect or withdraw, they owed almost $50,000 in taxes. I mean, I think even the most unsophisticated taxpayer is watching his or her bank account balance. If you know you're going to get a refund, you're checking to see when that money comes in, and when it doesn't come in after a few weeks, you start asking questions. Here, the Haynes owed almost $50,000. Christopher Haynes is a lawyer. His wife, Priscilla, is apparently some kind of businesswoman. So these were not unsophisticated taxpayers. There is no explanation in the record for why they did not make any inquiry as to why they're sitting on an apparent windfall of $50,000. That put them on notice that the IRS hadn't received their return. Let me ask you something that came up actually raised in the amicus brief. Since I think we're clear and it's uncontested that this is an either-or filing exercise, either mail or electronically, is it accurate to state that had this return been filed by mail, it would have been accepted by the IRS if it had been submitted in paper form? Again, the original return and the filed return are not in the record, so we can't actually say, but my understanding is if a return is filed that has this type of Social Security number error, that would not cause the paper return to be rejected. The IRS would send a follow-up letter at some point saying, you need to make this correction to your return. But it is my understanding that that would not cause the return to be deemed, the paper return to be deemed late filed. And it would obviate what we're here for today, the penalty. Is that correct? That's true. That's true. However, Congress has authorized the IRS to make different filing rules for paper returns than for electronic returns. This is in Section 7502 of the code and Section 6011E. They are two different. Is this one of those? Is this one of those instances? Correct. If you electronically file, you're necessarily dealing with a computer system. And sending something in via a computer system entails all kinds of computer processing codes that just aren't implicated when you send a paper return. So it would be fair to say the taxpayer assumes the risk of some type of electronic or software glitch that it would be safer if we all sent our returns in on paper. Is that what the IRS is suggesting to us? I think yes and no. I mean, for sure the taxpayer assumes the risk of the method that he or she uses to file your return. At the same time, there are risks with filing a paper or with mailing a paper return. If you print your own return out and put it in an envelope with a stamp and drop it in your mailbox out front and it never makes it to the IRS, you have no proof of mailing. Under the Internal Revenue Code and the Treasury regulations, the only true proof, the only thing that's prima facie evidence of timely filing is a registered mail receipt. So you would need to take it to the post office and get a registered mail receipt. So both ways have their ups and downs. With an electronic return, all of the software programs allow you to log back in online and check the status of your return. So within a couple days, if you are paying attention to it, you can find out if your return has been accepted or not. So you actually can follow up more timely with an electronic return than a paper return. But either way, Your Honor, I think you're right, that a taxpayer assumes the risks of the method that he or she chooses to file the tax return. But as the Supreme Court pointed out in Boyle, it takes no special knowledge to know a deadline. Everyone knows the return is due April 15th. There's plenty of time to meet that deadline. Congress and the IRS allow taxpayers to have an automatic six-month extension so you get even more time. And the IRS also allows second extensions beyond that first one on a discretionary basis. So from the government's standpoint, it is doing everything it can to make this process less painful and that deadline easy enough to comply with. Taxpayers presume to have special knowledge of the computer system and what can go wrong. No, the taxpayer doesn't. I mean, of course, in this case, the taxpayer chose to use a CPA, and that CPA claims in his affidavit to be an expert in e-filing. So this particular CPA knew or should have known all of these rules. But even unsophisticated taxpayers are able to file their own returns. The evidence that was in the record in this case that the district court cited in its opinion was the same year that these taxpayers used a CPA. There were over, I think the number was over 12 million, or it might have been closer to 30 million taxpayers that filed their own returns electronically. Under Boyle, the taxpayer can't rely on the CPA. CPA is knowledge of the computer system. It's just like relying on an attorney. Correct, correct. You can't rely on the CPA. Correct. Just because you gave the CPA doesn't mean that you have not done something amiss. Correct. That brings this case precisely under Boyle. Boyle involved a state tax return. It was an individual who was appointed executor of his mother's estate. He didn't know anything about estate tax issues, and the Supreme Court recognized that he reasonably hired a probate attorney to help him. The probate attorney, it was just a matter of inadvertent oversight, missed the filing deadline.  It was normal and reasonable for taxpayers to hire attorneys and CPAs to help them with tax filings. They ultimately have a non-delegable duty to ensure the timely filing. So reliance on an expert's knowledge of the e-filing rules is not a reasonable cause under the statute for the late filing. But why isn't it an extenuating circumstance as to what happened here that would allow the taxpayer to assert the CPA's diligence in this case? Well, the only exception recognized by this court, and this is the Denenberg opinion, is when a CPA has given a taxpayer advice about whether a return has to be filed at all. So if your tax situation is maybe unclear and you go to a CPA and say, I'm not sure if I even have to file a tax return, and the CPA tells you or the taxpayer tells you, I've analyzed the law, I've determined you don't have to file a return, then it turns out that substantive legal advice was wrong. Yes, in that case, reliance on a CPA is a reasonable cause for the late filing. But in this case, there was no substantive legal advice about the electronic return. This was just mere return preparation and return filing. And in fact, the Denenberg case involved even closer facts than this case. In that case, it was two individuals, it was two brothers who owned a corporation, and they were in a dispute over how to treat a stock purchase transaction. And the CPA said, it's not clear to me how to even report this. The two of you need to sort this out. They couldn't manage to sort it out. The CPA got several extensions. Ultimately, the return wasn't filed because the brothers were still in this fight over how to report the transaction. And this court held that that doesn't rise to the level of substantive legal advice that would excuse the late filing. So simply hiring an electronic return preparer who's more versed in e-filing rules than a taxpayer, I don't think, and the district court held here, wouldn't meet the threshold that this court has recognized, providing an exception from the Boyle rule. You said that normally or usually the IRS sends out first an acknowledgment and then either an acceptance or a rejection. Correct. All right. If that's the usual procedure, and Mr. Lieber says this is a really important case, so do you have any other instances where there was a failure to send out an acknowledgment or an acceptance or rejection? I'm not aware of any other case. This is the only one. It's a fluke. To my knowledge, this is only the second case involving an electronic return. There's a second one pending in the Ninth Circuit, a case called Spottiswood. We sent a 20HA letter to the court last week. Is it the same issue, that the IRS failed to reply? I think in that case, no. The TurboTax did notify the taxpayer of the rejection, and in that case the taxpayer just didn't log back on for several months and so didn't see the rejection. Okay. Thank you. Thank you. Unless the court has further questions, we would just ask that you affirm the judgment. Thank you. Thank you. Mr. Lieber. You have five minutes, Your Honor. Twenty-five minutes, did you say, Your Honor? Five minutes. Five minutes. Congress passed Code Sections 6721 and 6724 that require mandatory e-filing for partnership returns and for information returns, like 1099s, W-2s, and all the rest of that. In that statute, they allow reasonable cause as an excuse for not paying the late filing penalty. So if you can imagine the Internal Revenue Service is here today arguing that the taxpayer should not have access to a facts and circumstances relief provision that's been in the code for over 100 years, and yet Congress passes a law specifically granting them that. And theirs is per se. If you e-file, you have to prepare a return, and then you have to have an e-filer that's certified, that satisfies the 1500 error codes, that can follow the handbook, that has a computer, and access to the Internet, and all the rest of that. And the IRS administratively is allowing access to it. Are you rebutting the argument before you, or are you giving us something entirely new here? No, I'm rebutting her argument that she was talking about the Dennenberg case. She wants to expand Boyle so that taxpayers per se do not have access to the reasonable cause relief provisions when they hire a CPA to e-file, prepare the return in e-file. That's not what Dennenberg says, and it's not what Congress intended. And so I'm addressing that. In the Dennenberg case, I'm going to read to you the sentence that's critical in this proceeding. This is a Fifth Circuit case in 91. First, let me say she cited two cases, McMahon and Dennenberg. McMahon, this is what the Seventh Circuit in 97 said, that Boyle held, and I quote, reliance on an agent, and here's the key phrase, for the ministerial task of filing a tax return by the statutory deadline. Dennenberg said the same thing. This is a Fifth Circuit case in 91. We read Boyle's holding more narrowly, key words, more narrowly, simply that the failure. So what the government is trying to do is take this 35-year-old case, apply it to e-filing, and deprive taxpayers permanently of having access even on a facts and circumstances test, which we have today, which I think is overwhelming. In 40 years, I don't think I've had a case where a taxpayer acted as reasonably as this one did. And have a per se rule that you cannot delegate the duty to e-file to a third party when they've promulgated their own form, Form 8879, that requires you to delegate to a third party. And they've established procedures that only third parties can provide those kinds of services in order to e-file. So where are the tax commentators here? In the United States, we have quoted, I think there's almost a dozen tax commentators, law review, bar journals, things like that. There's a firestorm of opposition to expanding Boyle to e-filing cases. The government was unable to cite a single one, and we looked high and low and couldn't find a single law review article, et cetera, supporting this idea of expanding Boyle. And that's the reason the amicus entered into appearance, because the tax bar is against this expansion. Notwithstanding that, wouldn't that be the responsibility of Congress to be clearer based on the technology that's available, or the responsibility of the Supreme Court to address Boyle with today's technology? Sure. You come to this court, and we do have Boyle, and we have followed Boyle. You just mentioned the Dennenberg case. We have filed Boyle to a certain extent. Sure, absolutely. I understand exactly. And Boyle involves a paper return, a paper tax return. It does not address an e-file return. By its very terms, it was intended to be limited. Its exceptions that it says or that you can delegate deal with complexity, which we have in this case because the CPA has to prepare the return, and then I'm going through all the steps of e-filing that he has to do. And in terms of Congress changing it, yes. In the last case I had here before this court, Congress, I testified before Congress on your law, and they codified it. Two statutes were enacted because this is the most prestigious tax court in the United States. What you will decide is influential all across this country. Can you prove what caused the glitch at this time? No. In the government? If they conduct additional discovery, would it be something provable? Well, it may be. Yes, ma'am? It may be because we can prove that we never got it. So we can prove that the CPA never got it or the cert never got it and the e-file provider didn't get it and either got it or failed to transmit to us. So we can identify two of the four steps that it didn't happen in. Okay. Thank you, sir. The court will be in recess for approximately 10, 15 minutes. This is the last time I'll be able to be before this court, and I want to thank you. Over the last 40 years, I've been here several times. Thank you very much. You're welcome. I hope you'll fill that.